1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10                            ----oo0oo----

11  EDWARD OLVERA, CARLA DE ROSE,
    Individually and as Guardian
12  Ad Litem for AND-O, CHD-O,
    COD-O, SD-O, AGD-O, GD-O, RD-
13  O, minor children, SUSAN            NO. CIV. 10-550 WBS CKD
    MORRISON, KELLY MEIS,
14
              Plaintiffs,              MEMORANDUM AND ORDER RE:
15                                     REQUEST FOR RECONSIDERATION
          v.                           BY THE DISTRICT COURT OF
16                                     MAGISTRATE JUDGE'S RULING
    COUNTY OF SACRAMENTO, JEANINE
17  LOPEZ, FERMINE PEREZ, JENNIFER
    CULLIVAN, BRYAN JONES, ROBIN
18  ROGERS, KEEVA PIERCE, VERONICA
    CARILLO, STEPHANIE LYNCH, LYNN
19  FRANK, SOLLA, LAURA COULTHARD
    And Does 1 through 20,
20
              Defendants.
21  _____/

22
                              ----oo0oo----
23

24       Plaintiffs brought this civil rights case against

25  defendants the County of Sacramento, the Department of Health and

26  Human Services ("DHHS"), and numerous DHHS employees based on an

27  investigation by Child Protective Services ("CPS") and the

28  initiation of dependency proceedings and removal of a minor child

                                    1

1   from the family home.   Presently before the court is defendants'
2   request for reconsideration by the district court of the
3   magistrate judge's ruling on plaintiffs' motion to compel
4   testimony relating to staffing meetings.

5   I.   Factual and Procedural Background

6         Plaintiffs and spouses Edward Olvera and Carla De Rose
7   (the "Olveras") are licensed marriage and family therapists and
8   are the natural parents of one of the minor children plaintiffs
9   and are the adoptive parents of the remaining six minor children
10  plaintiffs.  (Third Am. Compl. ("TAC") ¶¶ 37-38.)  In 2006, the
11  Olveras began a therapeutic program in their home for adopted
12  children suffering from severe emotional, psychological, and
13  behavioral disorders in which the children lived in their home
14  and received treatment and education.  (Id. ¶ 46.)  In November
15  2007, the Olveras purchased a larger home and enrolled more
16  children in their full-time, in-home program.  (Id. ¶ 49.)
17  Prior to beginning the program, the Olveras allegedly contacted
18  California's Community Care Licensing Division and were told that
19  permits were not required to run their program.  (Id. ¶¶ 46-48,
20  52-54.)

21        Beginning on December 19, 2008, defendant Jeanine
22  Lopez, an employee of the CPS unit of DHHS, began an
23  investigation of the Olveras' program.  (Id. ¶¶ 69, 71.)  During
24  the investigation, Lopez and other DHHS employees allegedly
25  conducted aggressive interviews of the minor children and
26  ultimately pursued a juvenile dependency case against the Olveras
27  and the minor children without justification.  (Id. ¶¶ 73, 138-
28  40.)  Defendants also allegedly removed one of the minor children

from the Olveras' home without conducting an adequate
investigation and submitted false allegations, false evidence,
and misrepresentations in and omitted exculpatory evidence from
documents submitted to the juvenile court. (<u>Id.</u> ¶ 141.)

On October 17, 2011, plaintiffs filed a motion to
compel the testimony of any person that attended staffing
meetings and to disallow objections to such testimony based on
attorney-client privilege. (Docket No. 54.) Plaintiffs contend
that decisions regarding the materials ultimately included in
warrant applications presented to the court are central to their
complaint and allege that these decisions were made during the
staffing meetings. (Pls.' Mot. to Compel at 4:3-16 (Docket No.
68).) Defendants objected to plaintiffs' motion and argued that
all communications made during the staffing meetings were covered
by attorney-client privilege because the purpose of the meetings
was to receive legal advice. To this end, defendants argued that
"[t]here were no non-privileged communications which occurred
during any staffing meeting." (Defs.' Opp'n to Pls.' Mot. to
Compel at 52 (Docket No. 68).)

On December 14, 2011, at the hearing on the motion to
compel that was held in front of the Magistrate Judge, defense
counsel agreed that it was "not [his] position that just having
an attorney there at any meeting would render all communications
subject to the attorney/client privilege . . . ." (Dec. 14,
2011, Hearing at 2:11-13 (Docket No. 80).) Defense counsel
explained that "[i]f it's about facts, if it was about decisions,
if it was about things that were considered, I think I would
agree that that would be fair game." (<u>Id.</u> at 9:5-8.)

3

1    Following the hearing, the Magistrate Judge held that
2  objections based on attorney-client privilege would be disallowed
3  for testimony regarding the staffing meetings.  (Docket No. 74.)
4  The Magistrate Judge noted that "[a]lthough defendants disavow
5  reliance on the advice of counsel as an affirmative defense,
6  defendants contend that the decision to proceed with the warrant
7  applications at issue in this case was constitutional.  That
8  decision was made during meetings which defendants now seek to
9  shield from disclosure." (Dec. 15, 2011, Order at 2:6-10.)  The
10  Magistrate Judge also found that "[t]he evidence submitted by
11  plaintiffs in support of the motion to compel appears to be
12  sufficient to establish a prima facie case of civil conspiracy to
13  deprive plaintiffs of their constitutional rights to familial
14  association." (Id. at 2:21-23.)  On December 29, 2011,
15  defendants filed the instant request for reconsideration of the
16  Magistrate Judge's Order compelling testimony.
17  II.  Discussion
18    Where a magistrate judge's order addresses a
19  non-dispositive matter, a district judge shall modify or set
20  aside "any portion of the magistrate judge's order found to be
21  clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a);
22  see also 28 U.S.C. § 636(b)(1)(A).  A magistrate judge's
23  pre-trial discovery orders are generally considered
24  non-dispositive.  Santos v. Quebecor World Long Term Disability
25  Plan, No. 1:08-CV-565, 2009 WL 1362696, at *1 (E.D. Cal. May 14,
26  2009).  "[A] magistrate's order is 'clearly erroneous' if, after
27  considering all of the evidence, the district court is left with
28  the definite and firm conviction that a mistake has been

4

committed." <u>Yent v. Baca</u>, No. 01-10672, 2002 WL 32810316, at *2
(C.D. Cal. Dec. 16, 2002).  "[T]he order is 'contrary to law'
when it fails to apply or misapplies relevant statutes, case law
or rules of procedure." <u>Id.</u> "The reviewing court may not simply
substitute its judgment for that of the deciding court." <u>Grimes
v. City & Cnty. of S.F.</u>, 951 F.2d 236, 241 (9th Cir. 1991).

        "In federal question cases, federal privilege law
applies." <u>NLRB v. N. Bay Plumbing, Inc.</u>, 102 F.3d 1005, 1009
(9th Cir. 1996) (citing Fed. R. Evid. 501).  Pursuant to the
Federal Rules of Civil Procedure, a party is entitled to "obtain
discovery regarding any matter, not privileged, that is relevant
to the claim or defense of any party . . . ." Fed. R. Civ. P.
26(b)(1).  The purpose of discovery is to remove surprise from
trial preparation so that the parties obtain the evidence
necessary to evaluate and resolve their dispute. <u>Ragge v.
MCA/Universal Studios</u>, 165 F.R.D. 388, 391 (C.D. Cal. 2002).

        "The burden of proving that the attorney-client
privilege applies rests with the party asserting it." <u>Weil v.
Inv./Indicators, Research & Mgmt., Inc.</u>, 647 F.2d 18, 25 (9th
Cir. 1981).  Federal Rule of Civil Procedure 26(b)(5) provides
that the party claiming the privilege must "(i) expressly make
the claim; and (ii) describe the nature of the documents,
communications, or tangible things not produced or disclosed --
and do so in a manner that, without revealing the information
itself privileged or protected, will enable other parties to
assess the claim." Fed. R. Civ. P. 26(b)(5)(i)-(ii).  Attorney-
client privilege is established: "(1) Where legal advice of any
kind is sought (2) from a professional legal advisor in his

1  capacity as such, (3) the communications relating to that

2  purpose, (4) made in confidence (5) by the client, (6) are at his

3  instance permanently protected (7) from disclosure by himself or

4  by the legal advisor, (8) except the protection be waived . . .

5  .″ United States v. Plache, 913 F.2d 1375, 1379 (9th Cir. 1990)

6  (quoting 8 Wigmore, Evidence § 2292 (1961)).

7          ″Where a party raises a claim which in fairness

8  requires disclosure of the protected communication, the privilege

9  may be implicitly waived.″ Chevron Corp. v. Pennzoil Co., 974

10  F.2d 1156, 1162 (9th Cir. 1992).  A court may find that attorney-

11  client privilege is implicitly waived where: ″(1) the party

12  asserts the privilege as a result of some affirmative act, such

13  as filing suit; (2) through this affirmative act, the asserting

14  party puts the privileged information at issue; and (3) allowing

15  the privilege would deny the opposing party access to information

16  vital to its defense.″ Home Indem. Co. v. Lane Powell Moss &

17  Miller, 43 F.3d 1322, 1326 (9th Cir. 1995) (citing Hearn v. Rhay,

18  68 F.R.D. 574, 581 (E.D. Wash. 1975)).  Defendants argue that

19  they have not raised an affirmative defense based on advice of

20  counsel.  Courts in other cases, however, have found implied

21  waiver of attorney-client privilege in instances in which the

22  magic words ″advice of counsel″ are not used but where the

23  circumstances underlying an affirmative defense necessarily rely

24  on otherwise privileged material.  See, e.g., Roehrs v. Minn.

25  Life Ins. Co., 228 F.R.D. 642, 646-47 (D. Ariz. 2005) (finding

26  implied waiver of attorney-client privilege where information

27  obtained from counsel was used in decisionmaking process that

28  defendant claimed was made in good faith); In re G-I Holdings

1  <u>Inc.</u>, 218 F.R.D. 428, 433 (D.N.J. 2003) (finding implied waiver
2  of attorney-client privilege where defendants defended their
3  actions as based on a "reasonable basis," "reasonable cause," and
4  "good faith," when the decisionmaking included consulting an
5  attorney).

6          Defendants have conceded that communications during the
7  staffing meetings in which counsel was not a participant are not
8  covered under attorney-client privilege. (Reply to Pls.' Opp'n
9  to Defs.' Mot. for Recons. at 1:25-2:1.); <u>see also</u> <u>N. Pacifica,</u>
10 <u>LLC v. City of Pacifica</u>, 274 F. Supp. 2d 1118, 1127 (N.D. Cal.
11 2003) ("[T]he mere attendance of an attorney at a meeting does
12 not render everything done or said at that meeting privileged."
13 (quoting <u>Marten v. Yellow Freight System, Inc.</u>, No. 96-2013-GTV,
14 1998 WL 13244, at *7 (D. Kan. Jan. 6, 1998))). The remaining
15 question is therefore whether the Magistrate Judge committed
16 clear error or ruled contrary to law when she held that legal
17 advice offered by counsel at the staffing meetings was not
18 covered by attorney-client privilege.

19         The crux of plaintiffs' claim is that the decision to
20 proceed with warrant applications in this case was
21 unconstitutional. Although the parties' versions of events
22 differ semantically, both appear to agree that the determination
23 to pursue a warrant application was made during the staffing
24 meetings. (<u>See, e.g.</u>, Pls.' Opp'n to Defs.' Mot. for Recons. at
25 6:17-19 ("[T]he <u>primary purpose</u> for the staffings . . . was to
26 make a 'determination' on the DeRose-Olvera family . . . ."];
27 Reply to Pls.' Opp'n to Defs.' Mot. for Recons. at 3:6-8
28 ("Accordingly, the 'determination' after consultation with County

1  Counsel, was to initiate legal action to request that the Court
2  take jurisdiction of the minors.")).  Defendants argue that the
3  decision to proceed with the warrant application was
4  constitutional and have raised an affirmative defense of good
5  faith.  (<u>See, e.g.</u>, Answer to Am. Compl. by Cnty. of Sacramento
6  at 13:11-12, 14:10-11 (Docket No. 36).)  Defendants claim that
7  their decision to proceed with the warrant application was based
8  on the subjective and allegedly reasonable evaluation of the
9  relevant facts and the law.  This evaluation necessarily
10 incorporates what defendants learned from county counsel.
11 Defendants cannot both claim that the decisionmaking process was
12 reasonable and took into consideration the allegedly exculpatory
13 evidence and prevent plaintiffs from investigating how this
14 decision was made.  For plaintiffs to be able to respond to
15 defendants' affirmative defense, it is critical that they be able
16 to investigate the subjective good faith beliefs and mental
17 states of those defendants responsible for issuing the warrants.
18 Having elected to assert a good faith defense, defendants must
19 live with the consequences.  Accordingly, as defendants
20 implicitly waived attorney-client privilege with respect to
21 communications made during the staffing meeting, the Magistrate
22 Judge's December 15, 2011, Order, compelling testimony, was not
23 clearly erroneous or contrary to law.[1]

24      IT IS THEREFORE ORDERED that defendants' request for
25 reconsideration by the District Court of the Magistrate Judge's

26 ─────────────────
27      [1]   Because the motion is denied based on defendants'
   implicit waiver of attorney-client privilege, the court need not
   address whether the crime-fraud exception is applicable in this
28 case.

1  December 15, 2011, Order be, and the same hereby is, DENIED.

2  DATED:  January 27, 2012

3

4                              WILLIAM B. SHUBB

5                              UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28