UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

EDWARD OLVERA, CARLA DE ROSE,
Individually and as Guardian
Ad Litem for AND-O, CHD-O,
COD-O, SD-O, AGD-O, GD-O, RD-
O, minor children, SUSAN            NO. CIV. 10-550 WBS CKD
MORRISON, KELLY MEIS,

        Plaintiffs,              MEMORANDUM AND ORDER RE:
                                 REQUEST FOR RECONSIDERATION
    v.                           BY THE DISTRICT COURT OF
                                 MAGISTRATE JUDGE'S RULING
COUNTY OF SACRAMENTO, JEANINE
LOPEZ, FERMINE PEREZ, JENNIFER
CULLIVAN, BRYAN JONES, ROBIN
ROGERS, KEEVA PIERCE, VERONICA
CARILLO, STEPHANIE LYNCH, LYNN
FRANK, SOLLA, LAURA COULTHARD
And Does 1 through 20,

        Defendants.
_____/


                ----oo0oo----


        Plaintiffs brought this civil rights case against

defendants the County of Sacramento, the Department of Health and

Human Services ("DHHS"), and numerous DHHS employees based on an

investigation by Child Protective Services ("CPS") and the

initiation of dependency proceedings and removal of a minor child

1

from the family home.  Presently before the court is defendants'
request for reconsideration by the district court of the
magistrate judge's ruling on plaintiffs' motion to compel
testimony relating to staffing meetings.

I.   Factual and Procedural Background

        Plaintiffs and spouses Edward Olvera and Carla De Rose
(the "Olveras") are licensed marriage and family therapists and
are the natural parents of one of the minor children plaintiffs
and are the adoptive parents of the remaining six minor children
plaintiffs.  (Third Am. Compl. ("TAC") ¶¶ 37-38.)  In 2006, the
Olveras began a therapeutic program in their home for adopted
children suffering from severe emotional, psychological, and
behavioral disorders in which the children lived in their home
and received treatment and education.  (Id. ¶ 46.)  In November
2007, the Olveras purchased a larger home and enrolled more
children in their full-time, in-home program.  (Id. ¶ 49.)
Prior to beginning the program, the Olveras allegedly contacted
California's Community Care Licensing Division and were told that
permits were not required to run their program.  (Id. ¶¶ 46-48,
52-54.)

        Beginning on December 19, 2008, defendant Jeanine
Lopez, an employee of the CPS unit of DHHS, began an
investigation of the Olveras' program.  (Id. ¶¶ 69, 71.)  During
the investigation, Lopez and other DHHS employees allegedly
conducted aggressive interviews of the minor children and
ultimately pursued a juvenile dependency case against the Olveras
and the minor children without justification.  (Id. ¶¶ 73, 138-
40.)  Defendants also allegedly removed one of the minor children

1   from the Olveras' home without conducting an adequate

2   investigation and submitted false allegations, false evidence,

3   and misrepresentations in and omitted exculpatory evidence from

4   documents submitted to the juvenile court.  (<u>Id.</u> ¶ 141.)

5         On October 17, 2011, plaintiffs filed a motion to

6   compel the testimony of any person that attended staffing

7   meetings and to disallow objections to such testimony based on

8   attorney-client privilege.  (Docket No. 54.)  Plaintiffs contend

9   that decisions regarding the materials ultimately included in

10  warrant applications presented to the court are central to their

11  complaint and allege that these decisions were made during the

12  staffing meetings.  (Pls.' Mot. to Compel at 4:3-16 (Docket No.

13  68).)  Defendants objected to plaintiffs' motion and argued that

14  all communications made during the staffing meetings were covered

15  by attorney-client privilege because the purpose of the meetings

16  was to receive legal advice.  To this end, defendants argued that

17  "[t]here were no non-privileged communications which occurred

18  during any staffing meeting."  (Defs.' Opp'n to Pls.' Mot. to

19  Compel at 52 (Docket No. 68).)

20        On December 14, 2011, at the hearing on the motion to

21  compel that was held in front of the Magistrate Judge, defense

22  counsel agreed that it was "not [his] position that just having

23  an attorney there at any meeting would render all communications

24  subject to the attorney/client privilege . . . ."  (Dec. 14,

25  2011, Hearing at 2:11-13 (Docket No. 80).)  Defense counsel

26  explained that "[i]f it's about facts, if it was about decisions,

27  if it was about things that were considered, I think I would

28  agree that that would be fair game."  (<u>Id.</u> at 9:5-8.)

3

1        Following the hearing, the Magistrate Judge held that
2   objections based on attorney-client privilege would be disallowed
3   for testimony regarding the staffing meetings.   (Docket No. 74.)
4   The Magistrate Judge noted that "[a]lthough defendants disavow
5   reliance on the advice of counsel as an affirmative defense,
6   defendants contend that the decision to proceed with the warrant
7   applications at issue in this case was constitutional.   That
8   decision was made during meetings which defendants now seek to
9   shield from disclosure." (Dec. 15, 2011, Order at 2:6-10.)   The
10  Magistrate Judge also found that "[t]he evidence submitted by
11  plaintiffs in support of the motion to compel appears to be
12  sufficient to establish a prima facie case of civil conspiracy to
13  deprive plaintiffs of their constitutional rights to familial
14  association." (Id. at 2:21-23.)   On December 29, 2011,
15  defendants filed the instant request for reconsideration of the
16  Magistrate Judge's Order compelling testimony.

17  II.   Discussion

18        Where a magistrate judge's order addresses a
19  non-dispositive matter, a district judge shall modify or set
20  aside "any portion of the magistrate judge's order found to be
21  clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a);
22  see also 28 U.S.C. § 636(b)(1)(A).   A magistrate judge's
23  pre-trial discovery orders are generally considered
24  non-dispositive.   Santos v. Quebecor World Long Term Disability
25  Plan, No. 1:08-CV-565, 2009 WL 1362696, at *1 (E.D. Cal. May 14,
26  2009).   "[A] magistrate's order is 'clearly erroneous' if, after
27  considering all of the evidence, the district court is left with
28  the definite and firm conviction that a mistake has been

4

1  committed." <u>Yent v. Baca</u>, No. 01-10672, 2002 WL 32810316, at *2

2  (C.D. Cal. Dec. 16, 2002).   "[T]he order is 'contrary to law'

3  when it fails to apply or misapplies relevant statutes, case law

4  or rules of procedure." <u>Id.</u>  "The reviewing court may not simply

5  substitute its judgment for that of the deciding court." <u>Grimes</u>

6  <u>v. City & Cnty. of S.F.</u>, 951 F.2d 236, 241 (9th Cir. 1991).

7       "In federal question cases, federal privilege law

8  applies." <u>NLRB v. N. Bay Plumbing, Inc.</u>, 102 F.3d 1005, 1009

9  (9th Cir. 1996) (citing Fed. R. Evid. 501).  Pursuant to the

10 Federal Rules of Civil Procedure, a party is entitled to "obtain

11 discovery regarding any matter, not privileged, that is relevant

12 to the claim or defense of any party . . . ." Fed. R. Civ. P.

13 26(b)(1).  The purpose of discovery is to remove surprise from

14 trial preparation so that the parties obtain the evidence

15 necessary to evaluate and resolve their dispute. <u>Ragge v.</u>

16 <u>MCA/Universal Studios</u>, 165 F.R.D. 388, 391 (C.D. Cal. 2002).

17      "The burden of proving that the attorney-client

18 privilege applies rests with the party asserting it." <u>Weil v.</u>

19 <u>Inv./Indicators, Research & Mgmt., Inc.</u>, 647 F.2d 18, 25 (9th

20 Cir. 1981).  Federal Rule of Civil Procedure 26(b)(5) provides

21 that the party claiming the privilege must "(i) expressly make

22 the claim; and (ii) describe the nature of the documents,

23 communications, or tangible things not produced or disclosed --

24 and do so in a manner that, without revealing the information

25 itself privileged or protected, will enable other parties to

26 assess the claim." Fed. R. Civ. P. 26(b)(5)(i)-(ii).  Attorney-

27 client privilege is established: "(1) Where legal advice of any

28 kind is sought (2) from a professional legal advisor in his

capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived . . . ." <u>United States v. Plache</u>, 913 F.2d 1375, 1379 (9th Cir. 1990) (quoting 8 Wigmore, <u>Evidence</u> § 2292 (1961)).

        "Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." <u>Chevron Corp. v. Pennzoil Co.</u>, 974 F.2d 1156, 1162 (9th Cir. 1992).  A court may find that attorney-client privilege is implicitly waived where: "(1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense." <u>Home Indem. Co. v. Lane Powell Moss & Miller</u>, 43 F.3d 1322, 1326 (9th Cir. 1995) (citing <u>Hearn v. Rhay</u>, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).  Defendants argue that they have not raised an affirmative defense based on advice of counsel.  Courts in other cases, however, have found implied waiver of attorney-client privilege in instances in which the magic words "advice of counsel" are not used but where the circumstances underlying an affirmative defense necessarily rely on otherwise privileged material. <u>See, e.g.</u>, <u>Roehrs v. Minn. Life Ins. Co.</u>, 228 F.R.D. 642, 646-47 (D. Ariz. 2005) (finding implied waiver of attorney-client privilege where information obtained from counsel was used in decisionmaking process that defendant claimed was made in good faith); <u>In re G-I Holdings</u>

1  Inc., 218 F.R.D. 428, 433 (D.N.J. 2003) (finding implied waiver

2  of attorney-client privilege where defendants defended their

3  actions as based on a "reasonable basis," "reasonable cause," and

4  "good faith," when the decisionmaking included consulting an

5  attorney).

6      Defendants have conceded that communications during the

7  staffing meetings in which counsel was not a participant are not

8  covered under attorney-client privilege.  (Reply to Pls.' Opp'n

9  to Defs.' Mot. for Recons. at 1:25-2:1.); see also N. Pacifica,

10 LLC v. City of Pacifica, 274 F. Supp. 2d 1118, 1127 (N.D. Cal.

11 2003) ("[T]he mere attendance of an attorney at a meeting does

12 not render everything done or said at that meeting privileged."

13 (quoting Marten v. Yellow Freight System, Inc., No. 96-2013-GTV,

14 1998 WL 13244, at *7 (D. Kan. Jan. 6, 1998))).  The remaining

15 question is therefore whether the Magistrate Judge committed

16 clear error or ruled contrary to law when she held that legal

17 advice offered by counsel at the staffing meetings was not

18 covered by attorney-client privilege.

19     The crux of plaintiffs' claim is that the decision to

20 proceed with warrant applications in this case was

21 unconstitutional.  Although the parties' versions of events

22 differ semantically, both appear to agree that the determination

23 to pursue a warrant application was made during the staffing

24 meetings.  (See, e.g., Pls.' Opp'n to Defs.' Mot. for Recons. at

25 6:17-19 ("[T]he primary purpose for the staffings . . . was to

26 make a 'determination' on the DeRose-Olvera family . . . .");

27 Reply to Pls.' Opp'n to Defs.' Mot. for Recons. at 3:6-8

28 ("Accordingly, the 'determination' after consultation with County

1 Counsel, was to initiate legal action to request that the Court
2 take jurisdiction of the minors."")).  Defendants argue that the
3 decision to proceed with the warrant application was
4 constitutional and have raised an affirmative defense of good
5 faith.  (<u>See, e.g.</u>, Answer to Am. Compl. by Cnty. of Sacramento
6 at 13:11-12, 14:10-11 (Docket No. 36).)  Defendants claim that
7 their decision to proceed with the warrant application was based
8 on the subjective and allegedly reasonable evaluation of the
9 relevant facts and the law.  This evaluation necessarily
10 incorporates what defendants learned from county counsel.
11 Defendants cannot both claim that the decisionmaking process was
12 reasonable and took into consideration the allegedly exculpatory
13 evidence and prevent plaintiffs from investigating how this
14 decision was made.  For plaintiffs to be able to respond to
15 defendants' affirmative defense, it is critical that they be able
16 to investigate the subjective good faith beliefs and mental
17 states of those defendants responsible for issuing the warrants.
18 Having elected to assert a good faith defense, defendants must
19 live with the consequences.  Accordingly, as defendants
20 implicitly waived attorney-client privilege with respect to
21 communications made during the staffing meeting, the Magistrate
22 Judge's December 15, 2011, Order, compelling testimony, was not
23 clearly erroneous or contrary to law.[1]

24     IT IS THEREFORE ORDERED that defendants' request for
25 reconsideration by the District Court of the Magistrate Judge's

26 _____

27 [1]  Because the motion is denied based on defendants'
implicit waiver of attorney-client privilege, the court need not
28 address whether the crime-fraud exception is applicable in this
case.

8

1  December 15, 2011, Order be, and the same hereby is, DENIED.

2  DATED:   January 27, 2012

3

4  WILLIAM B. SHUBB

5  UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9